THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WALKER, Defendant-Appellant.

First District (4th Division)   Nos. 1—96—1869, 1—96—3907 cons.

Opinion filed September 25, 1997.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Gerald Walker appeals two separate criminal convictions. One of them raises a serious question concerning the potential tainting of a jury by the unwarranted and indefensible remarks of a Chicago police officer in a criminal court elevator.

While we strongly disapprove of what happened in that elevator, our examination of the record leads us to affirm the conviction in question.

On March 6, 1996, in case No. 1—96—1869, Walker was sentenced on two counts of aggravated criminal sexual assault and on separate armed robbery and aggravated kidnapping counts.

On September 26, 1996, in case No. 1—96—3907, Walker was sentenced on two counts of aggravated criminal sexual assault and on separate armed robbery and aggravated kidnapping counts.

These two cases were consolidated for the purpose of appeal.

502

FACTS

## A. No. 1—96—1869

On February 18, 1993, Walker allegedly abducted a 16-year-old female off the street at gunpoint and sexually assaulted her in a nearby garage. Walker was placed under arrest and tried before a jury. On January 4, 1996, during the second day of trial, Walker's trial attorneys told the trial court they heard a Chicago police officer speak to several jurors near the elevator:

"Judge, after we broke for lunch, I and [co-counsel], we were standing waiting for the elevator and the sheriff came out. There was no one else in the hallway. The sheriff came out with the jury. An elevator came and we walked to the other side to allow the jury to take the elevator.

The sheriff asked three police officers, not involved in this case, no idea who they are to exit the elevator. And they were dressed in uniform, bulletproof vests, and they had there [sic] flashlights and everything. And as they walked out they made a joke at which everybody smiled; don't we get lunch, too.

But then one of the officers said oh, it's the jury. All we care is that you find them guilty. That's all we care about. Then another police officer said, you know, you are not supposed to be talking to them. It was all done in a joking kind of way and half the jury was on. Half the jury was still coming on. We could see them. They could see me and that was said and the doors shut.

The basis of that is that these police officers wear [sic] talking to a jury outside the courtroom and telling them this information. We would ask for a mistrial.

Alternatively, we would ask that you, when the jury comes out, to admonish them that the only evidence they are supposed to listen to is the evidence they hear in this courtroom and not outside of this courtroom."

The trial court denied Walker's request for a mistrial and instead granted Walker's motion to admonish the jury about this incident. The court addressed the jury:

"All right. Folks, it's been brought to my attention that when you were being taken to lunch a police officer who had nothing to do with this case may have made some comments to you about the case in general about finding somebody guilty. I just want to remind you of a couple of things. Mr. Walker, as every person in the United States, has a presumption of innocence. .

The burden is on the state to prove the defendant guilty beyond a reasonable doubt. The only evidence that you are to consider is evidence that you have heard from the jury stand, evidence that

you will hear from the jury stand. Anything that takes place outside the courtroom you are to disregard completely.

So, I think you all know that anyway, but I just want to remind you."

Defense counsel did not object to the admonition at the time. The trial proceeded.

At trial, the prosecution presented DNA evidence comparing semen samples taken from the victim immediately after the alleged rape with blood and saliva samples from Walker. The prosecution's criminologist testified that the semen samples matched Walker's samples. The criminologist further testified that the probability of another match for these samples was less than one billion to one. The prosecution also presented evidence that the victim identified Walker in a lineup.

On January 9, 1996, after the jury had deliberated for less than two hours, Walker was convicted. He was sentenced on two counts of aggravated criminal sexual assault to consecutive terms of 50 years each, a total of 100 years. Walker also was sentenced on separate armed robbery and aggravated kidnapping counts to terms of 50 years and 30 years respectively, concurrent with each other and the sexual assault counts. Walker's total sentence in this case was 100 years.

B. No. 1—96—3907

On February 25, 1993, Walker allegedly abducted a 15-year-old female at gunpoint off the street and sexually assaulted her in his car. Walker was arrested, and in his initial presentence investigation, Walker declined to provide certain background psychological and physiological information until he conferred with an attorney.

Walker was tried before a jury. At this trial, the prosecution also presented DNA evidence comparing semen samples taken from the victim immediately after the alleged rape with blood and saliva samples from Walker. The prosecution's criminologist again testified that the semen samples matched Walker's samples. The criminologist further testified that the probability of another match for these samples was less than one billion to one. The prosecution also presented evidence that the victim identified Walker in a lineup. On July 31, 1996, after the jury had deliberated for about one hour, Walker was convicted.

Before sentencing, the court noted that page two of the presentence investigation was not completed. During a short recess, Walker spoke with Edward Palma, supervisor of adult probation, who took handwritten notes to complete page two of Walker's presentence

investigation report. Palma's note states under "PHYSIOLOGICAL INFORMATION": "Blackout seizures—$1^1/_2$ years—Due to stress/tension (per physician)—Medication taken—Unknown." The court then asked the parties if they requested any changes to the report. Both defense counsel and the prosecutor declined to make any changes. The court did not conduct a fitness hearing.

On September 26, 1996, Walker was sentenced on two counts of aggravated criminal sexual assault to consecutive terms of 60 years each, a total of 120 years. He also was sentenced on separate armed robbery and aggravated kidnapping counts to terms of 60 years and 30 years respectively, concurrent with each other and with the sexual assault counts. Walker's total sentence in this case was 120 years.

ISSUES

1. In No. 1—96—1869, is Walker entitled to a new trial because he was prejudiced by the Chicago police officer's extrajudicial statement in the presence of some jurors, despite the trial court's subsequent admonishment to the jury?

2. In No. 1—96—3907, is Walker entitled to a new trial because he was denied effective assistance of counsel when his attorney failed to demand a fitness hearing based upon the presentence investigation report, which disclosed Walker's use of unknown medication?

3. Is Walker entitled to resentencing in No. 1—96—3907 if he receives a new trial in No. 1—96—1869?

OPINION

A. No. 1—96—1869

■ Extrajudicial communications to jurors "are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Parker v. Gladden*, 385 U.S. 363, 364, 17 L. Ed. 2d 420, 422, 87 S. Ct. 468, 470 (1966). "[T]he 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73, 13 L. Ed. 2d 424, 429, 85 S. Ct. 546, 549 (1965). However, when the defendant cannot demonstrate any apparent injury or prejudice resulting from an extrajudicial communication to jurors by a third person, the jury's verdict will not be set aside. *People v. Rettig*, 50 Ill. 2d 317, 278 N.E.2d 781 (1972); *People v. Kawoleski*, 313 Ill. 257, 145 N.E. 203 (1924).

In *Parker*, a bailiff assigned to a sequestered jury spoke about the

defendant to a juror in the presence of other jurors, stating, "Oh that wicked fellow, he is guilty." *Parker*, 385 U.S. at 363, 17 L. Ed. 2d at 422, 87 S. Ct. at 470. On another occasion, the bailiff spoke to a different juror about convicting the defendant, saying, "If there is anything wrong *** the Supreme Court will correct it." *Parker*, 385 U.S. at 364, 17 L. Ed. 2d at 422, 87 S. Ct. at 470. Additionally, at least one regular or alternate juror overheard the bailiff's statements.

The Court held these statements violated the sixth amendment's guarantee of a trial by an impartial jury. *Parker*, 385 U.S. at 364, 17 L. Ed. 2d at 422, 87 S. Ct. at 470. The Court characterized the bailiff's statements as "private talk," intended to sway the jury by "outside influence." *Parker*, 385 U.S. at 364, 17 L. Ed. 2d at 422, 87 S. Ct. at 470. However, contrary to Walker's contention, the Court did not create a *per se* rule that such statements necessarily prejudice criminal defendants and always entitle them to a new trial.

Rather, the Court focused on the "official character of the bailiff—as an officer of the court as well as the State," the constant contact between the bailiff and the jury due to sequestration, and the considerable length of deliberations, 26 hours, indicating a difference of opinion among the jurors. *Parker*, 385 U.S. at 365, 17 L. Ed. 2d at 423, 87 S. Ct. at 470. Most importantly, the Court found evidence of actual prejudice in the testimony of a juror who admitted the bailiff's statements "must have influenced" her decision to convict the defendant. *Parker*, 385 U.S. at 365 n.3, 17 L. Ed. 2d at 423 n.3, 87 S. Ct. at 470-71 n.3.

In *Rettig*, a deputy sheriff assigned to a jury spoke with several jurors about their lunch immediately before deliberations. The deputy sheriff, who also was a witness in the case, spoke to the jurors again during deliberations, explaining that the trial judge would not answer a question posed by the jury. The court held the extrajudicial communication did not prejudice the defendant. *Rettig*, 50 Ill. 2d at 320. The court found no prejudice because the deputy sheriff's statements during brief encounters with the jury were not "manifestly calculated to influence the jury's decision." *Rettig*, 50 Ill. 2d at 319.

The court also found that the deputy sheriff's testimony against the defendant was neither crucial nor controverted. *Rettig*, 50 Ill. 2d at 320. The court declined to presume extrajudicial statements by a deputy sheriff to the jury are prejudicial as a matter of law. The *Parker* decision, said the court, "does not in any way diminish the need for showing that the rights of a defendant were prejudiced" by the extrajudicial statements. *Rettig*, 50 Ill. 2d at 319. See also *Waller v. Bagga*, 219 Ill. App. 3d 542, 579 N.E.2d 1073 (1991) (holding that a bailiff's comments that "this case shouldn't be here" did not reflect a "manifest tendency to sway" a civil jury against the plaintiff).

In *Kawoleski*, a deputy sheriff assigned to a jury made a remark while near the entire jury that "it should not take more than two or three minutes to convict that bird." 313 Ill. at 258. The defendant's lawyer brought this remark to the trial court's attention after the jury convicted the defendant. The court, reversing the conviction, held this remark was prejudicial to the defendant because it was "calculated to prejudice defendant with the jury." *Kawoleski*, 313 Ill. at 258.

■ Unlike the deputy sheriffs in *Parker*, *Rettig*, and *Kawoleski*, the Chicago police officer in the instant case was not assigned to the case and did not appear at trial. Unlike the bailiff in *Parker*, the police officer here did not shepherd a sequestered jury for more than a week. Aside from his incidental contact with only part of the jury near the elevators, the police officer was unknown to this jury.

Though the statements by the deputy sheriff in *Rettig* were harmless, the unfortunate statements by the police officer here, however flippant, may have been calculated to influence the jury's verdict. However, unlike the deputy sheriffs in *Parker* and *Kawoleski*, the police officer had not seen the defendant's trial and had no apparent basis for his remark, other than a general animus against criminal defendants. Additionally, unlike the trial court in *Kawoleski*, the trial court here immediately and effectively admonished the jury. Not only did the trial court instruct the jury to disregard the police officer's statements, but also to remember the defendant's presumption of innocence. Tellingly, in *Parker*, the Court found evidence the bailiff's statements influenced at least one juror's decision. Here, the record is devoid of any evidence showing the police officer's statement actually influenced the jury.

The defendant's attorney asked for a mistrial or, alternatively, for an admonition to the jury. The court did admonish the jury. Defense counsel did receive what she asked for. The defendant may not ask the trial court to admonish the jury regarding extrajudicial statements and then assign as error the court's failure to declare a mistrial for these same statements. *Cf. People v. Miller*, 120 Ill. App. 3d 495, 457 N.E.2d 1373 (1983). The jury presumably followed the court's instructions and based its verdict on the evidence. See *People v. Harris*, 123 Ill. 2d 113, 526 N.E.2d 335 (1988); *People v. Mitchell*, 152 Ill. 2d 274, 604 N.E.2d 877 (1992). The State's evidence was overwhelming. In a closer case, the outcome well might be different.

We note defense counsel never asked that jurors be questioned, individually or as a group, as to whether they heard the remarks in the elevator and, if so, whether the remarks had any impact. While the trial judge could have made the inquiry anyway, and perhaps he

should have, the lawyers certainly did not communicate any sense of urgency. Walker cannot show prejudice from this extrajudicial communication and is not entitled to a new trial.

**B. No. 1—96—3907**

■ An ineffective assistance of counsel claim is generally measured against the two-part standard of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). Under *Strickland*, a defendant must establish counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the fact finder would have reached a different result. *People v. Rice*, 257 Ill. App. 3d 220, 226, 628 N.E.2d 837, 841 (1993). Walker contends his attorney's failure to request a fitness hearing under section 104—21(a) of the Illinois Code of Criminal Procedure (725 ILCS 5/104—21(a) (West Supp. 1997)) constituted ineffective assistance and warrants a new trial.

■ A defendant is considered unfit to stand trial if he is unable to understand the nature and purpose of proceedings against him or to assist in his defense because of mental or physical problems. *Rice*, 257 Ill. App. 3d at 223. A defendant who is unfit to stand trial cannot be convicted consistent with due process. *People v. Guttierez*, 271 Ill. App. 3d 301, 648 N.E.2d 928 (1995). If a *bona fide* doubt as to a defendant's fitness has been raised, the trial court must conduct a fitness hearing. *People v. Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 952 (1991).

■ Formerly, section 104—21(a) of Code of Criminal Procedure expressed the General Assembly's conclusion that the influence of psychotropic medication on the defendant during trial always casts a *bona fide* doubt on the defendant's fitness. *People v. Gevas*, 166 Ill. 2d 461, 655 N.E.2d 461 (1995). Section 104—21(a) stated as follows: "A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1992).

This statute was amended, effective December 31, 1996, and now states: "A defendant who is receiving psychotropic drugs shall not be presumed unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West Supp. 1997).

We note that in a recent decision the Illinois Supreme Court, addressing the former statute, turned away from the remedy of automatic reversal in cases where a defendant received psychotropic drugs during his trial. *People v. Burgess*, 176 Ill. 2d 289, 303, 680 N.E.2d 357, 363 (1997).

In *Burgess*, the court analyzed the defendant's conduct at trial. It found there was nothing in the record to suggest he was unfit for trial or that the drugs he received had any effect on his fitness. A new trial was denied.

■ In the case before us, there is no need to inquire into the applicability of recent legislation or into the impact of *Burgess* on cases where a defendant is found to have been taking psychotropic drugs during trial and/or sentencing. Here, there is no evidence Walker was taking psychotropic drugs at trial or at sentencing. The defendant's brief statement in the presentence investigation report is vague, equivocal, and without factual support. No drug is named. No time frame is indicated. This is not enough to raise a question under the 1992 statute, even if it were applicable to this case.

A fitness hearing under section 104—21(a) was not necessary, and Walker's attorney was not required to request such a hearing. Walker can meet neither the performance nor the prejudice prong of *Strickland* and is not entitled to a new trial on his ineffective assistance claim.

Because Walker is not entitled to a new trial in No. 1—96—3907, we do not have to address the sentencing issue raised in the briefs.

## CONCLUSION

Walker's convictions and sentences in both Nos. 1—96—1869 and 1—96—3907 are affirmed.

Affirmed.

McNAMARA and BURKE, JJ., concur.