In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-3754

JAMES T. LOCKHEART,

*Petitioner-Appellant,*

*v.*

DON HULICK, Warden, Illinois River
Correctional Center,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 5306—**Elaine E. Bucklo**, *Judge.*

ARGUED MARCH 28, 2006—DECIDED APRIL 12, 2006

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* James Lockheart is serving a term of 30 years' imprisonment for attempted aggravated sexual assault. The principal testimony against him came from the intended victim, whose story was corroborated by employees at the restaurant where she worked. Lockheart, who represented himself throughout the state proceedings, contended that the witnesses, all of them white, had conspired to frame an innocent black man. Lockheart's first trial ended in a verdict of guilty, but the conviction was reversed after the appellate court concluded that a juror

should have been removed for cause. The second trial ended in a mistrial after the jury could not reach a unanimous verdict. The third trial produced another conviction, which remained standing after two appellate proceedings (dealing with both direct and collateral challenges). The Supreme Court of Illinois denied Lockheart's petition for leave to appeal from the second appellate decision. 202 Ill. 2d 686, 787 N.E.2d 178 (2003).

Lockheart then sought collateral relief in federal court. 28 U.S.C. §2254. The district court denied his petition. 334 F. Supp. 2d 1070 (N.D. Ill. 2004). Of the many issues that Lockheart raised, a certificate of appealability singled out whether the trial judge was biased plus an antecedent procedural question: whether Lockheart defaulted this subject by omitting it from his petition for leave to appeal in the Supreme Court of Illinois. See *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). That is the ground on which he lost in the district court, and it is the initial subject on this appeal.

To preserve a claim for federal collateral review, the petitioner must "fairly present" it to all levels of the state judiciary. That means, among other things, articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law. *Baldwin v. Reese*, 541 U.S. 27 (2004), concludes that this requirement is not met if a judge must go outside the four corners of the document in order to understand the contention's nature and basis. *Baldwin* held that, if the state's Supreme Court must read the decision of its appellant court in order to learn what the petitioner is arguing, then the issue has not been preserved for federal decision; a petition must *contain* each contention, and not just point to some other document where it might be located. Lockheart did just what *Baldwin* says is inadequate. His petition for leave to appeal to the Supreme Court of Illinois did not present a judicial-bias argument. Instead he asked the Supreme

Court to read other documents, such as his appellate brief and his "Petition for Leave to Appeal as a Matter of Right and in the Alternative" that he had filed in support of an earlier request for review. The state judges were under no obligation to track down and peruse those documents.

Now if state rules entitled litigants to present arguments by incorporation, then use of that approved device would preserve these issues. But Lockheart does not identify any rule of the Supreme Court of Illinois allowing this maneuver, and we could not find one. Supreme Court Rule 315(c) limits petitions to 20 pages, and such a cap is incompatible with incorporation by reference. A 50-page appellate brief "incorporated into" a petition would cause it to exceed the limit. Lockheart's petition was 22 pages (the court accepted it despite the length); the documents that Lockheart purported to incorporate by reference were substantially longer. So we are left with *Baldwin*: only arguments in the main body of the petition have been preserved, and the judicial-bias claim therefore has been forfeited.

For completeness we add that Lockheart has not established bias. The reason he argues that the judge was biased is because judicial partiality automatically vitiates a judgment, see *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), while judicial errors do not unless they not only violate the Constitution but also cause material harm to the defense. See *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Proving bias, as opposed to error, is not as easy as Lockheart supposes, however; treating error as proof of bias would obliterate the rule that mistakes do not support automatic reversal.

The record reveals that Judge Sacks, trying the case for the third time, had lost patience with Lockheart's limitations as a lawyer as well as with tactics that the judge thought designed to drag out the process ("milk the system,"

as the judge put it). The judge repeatedly chastised Lockheart out of the jury's hearing. None of these exchanges implies that the judge had any personal interest in the outcome or was unwilling to give black defendants fair trials. The record does not approach the level of acrimony held in *Liteky v. United States*, 510 U.S. 540 (1994), not to evince bias, let alone evince the sort of preconception that *Berger v. United States*, 255 U.S. 22 (1921), deemed unacceptable. During a trial for espionage held while the United States was at war with Germany, the judge in *Berger* supposedly declared of Americans with German ancestry that their "hearts are reeking with disloyalty", *id*. at 28; the Court thought this incompatible with a duty to treat all litigants impartially. Nothing of the sort occurred in Lockheart's trial. Though the judge was unhappy with Lockheart's conduct, that is different in kind from being prejudiced against black litigants as a class.

The only statement in the jury's hearing about which Lockheart now complains came during his cross-examination of Officer Drapiewski, who testified about his investigation and arrest of Lockheart. This exchange occurred:

> Lockheart: You didn't like the idea that a white lady was attacked by a black man, did you?
>
> [Prosecutor]: Objection to defendant's speeches.
>
> Court: Mr. Lockheart, please. You are making an issue that is not an issue in this case. Objection sustained. Ask another question.

Lockheart treats this as telling the jury that race was not an issue in the case. Yet the judge said no such thing—and at the end of all three trials the jury was instructed that, if it concluded that the witnesses had conspired on racial grounds to frame a black man, then it must acquit. Doubtless Drapiewski did *not* "like the idea that a white lady was attacked by a black man"; surely

he does not "like" sexual assaults by white men either; but Drapiewski's likes and dislikes had nothing to do with the charge laid against Lockheart. Drapiewski's druthers were "not an issue in the case," just as the judge said. Lockheart asked a rhetorical question to make an irrelevant point, not to obtain information from the witness. The judge did not err—let alone display bias—by telling Lockheart to desist.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*