In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2316

DONNELL D. WILSON,

*Petitioner-Appellant,*

*v.*

RON NEAL,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:22-cv-00205-JD-MGG — **Jon E. DeGuilio**, *Judge.*

ARGUED APRIL 10, 2024 — DECIDED JULY 24, 2024

Before RIPPLE, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner Donnell Wilson is serving an Indiana prison sentence of 100 years for committing two murders when he was sixteen years old. Wilson petitioned a federal court for a writ of habeas corpus. He asserts that the sentence violates the Eighth Amendment as construed by the Supreme Court of the United States in *Miller v. Alabama*, 567 U.S. 460 (2012). *Miller* held that a person may not be sentenced to a mandatory term of life in prison

without parole for a homicide committed while under the age of eighteen. Wilson contends the reasoning of *Miller* extends to a sentence like his: a sentence for a term of years that is so long that it amounts to a de facto life sentence.

We address two principal issues. First, the State contends Wilson's federal habeas petition is time-barred under 28 U.S.C. § 2244(d). The district court found his petition timely, and so do we. To decide that issue, we must consider in some detail Indiana Rule of Appellate Procedure 7(B), a unique rule that the Indiana Supreme Court invoked to reduce Wilson's sentence from 181 years to 100 years. Second, the district court denied relief on the merits, finding that the state-court decision rejected Wilson's Eighth Amendment claim under *Miller* on the merits and that the rejection was neither contrary to nor an unreasonable application of Supreme Court precedent. We agree and, on that basis, affirm the denial of Wilson's petition on the merits.

I.   *Factual and Procedural History*

   A.  *The Underlying Convictions*

We presume the facts set forth by the state court are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We reproduce the facts of the murders from the Indiana Supreme Court's summary of the evidence presented at Wilson's trial:

> In March 2013, sixteen-year-old Donnell Wilson, his then-girlfriend, her brother Jonte Crawford, and another of the Crawfords' relatives were all walking home from playing basketball in their hometown of Gary, Indiana. When the group encountered fifteen-year-old Derrick

Thompson, Wilson and Jonte flashed the handguns they were carrying and began harassing and intimidating Thompson, making references to the local Tre 7 gang. The pair then took Thompson's smartphone and headphones and walked away.

A short time later, the group happened upon brothers Shaqwone Ham and Charles Wood. Wilson and Jonte were members of several interrelated gangs, including the Get Fresh Boys, Tre 7, and Glen Park Affiliated, which were all at odds with the Bottom Side gang, to which Ham and Wood belonged. Wilson had previously argued in person with the brothers and their disputes had continued online with the brothers threatening to fight Wilson. The groups initially exchanged greetings, but Wilson and Jonte soon began to argue with the brothers. Wilson exclaimed, "Oh, y'all looking for me? I'm in your hood." Seconds later, he fatally shot Wood in the head. When Ham tried to run, Jonte shot him several times, killing him too. It is unclear from the record if Wilson also shot at Ham. The brothers were unarmed.

Three hours before the murders, Wilson—who had previously made several gang-related posts on Twitter—sent out a new tweet declaring "Glen Park or get shot," referring to the Gary neighborhood where he lived. An hour after the murder, he tweeted "Chillen wit my bros #[GetFreshBoys]." Jonte and Wilson were quickly

arrested, and police found Thompson's posses-
sions on Jonte. Wilson was charged with two
counts of murder, Class B felony armed rob-
bery, and a Class D felony conspiracy to commit
criminal gang activity. The State also sought a
criminal gang enhancement.

While Wilson was lodged in the Lake County
Jail awaiting trial, he told his cellmate he killed
Ham and Wood because they were affiliated
with the rival Bottom Side gang. He also
explained how his gang affiliation had led to
Twitter disputes with members of the Bottom
Side gang. Wilson, along with some fellow
inmates, later jumped this cellmate because he
was from the "other side of the bridge" dividing
Gary. During this period, Wilson was also
recorded on a jailhouse video conference stating
he wanted to "smash" a member of a rival gang
incarcerated in the same facility and indicated a
desire to continue participating in gang activity.

After a four-day trial beginning in June 2014, a
jury found Wilson guilty on all counts. The trial
court sentenced Wilson to a term of sixty years
for the first murder conviction, fifty-five
consecutive years for the second murder
conviction, six consecutive years for armed
robbery, and two years for criminal gang
activity, with an additional sixty consecutive
years added under the criminal gang
enhancement, for an aggregate sentence of 183
years. Wilson's trial counsel did not retain any

> experts in preparation for the sentencing
> hearing and did not present any witnesses at
> sentencing. When handing down the sentence,
> the court cited several aggravating factors, but
> found Wilson's youth to be a mitigating factor.

*Wilson v. State*, 157 N.E.3d 1163, 1167–68 (Ind. 2020) (internal record citations and footnotes omitted).

B. *Procedural History*

Wilson's case has an unusual procedural history resulting from the operation of Indiana Appellate Rule 7(B), discussed below. The exact dates of various state-court events are vital in determining whether Wilson's petition is timely.

On August 5, 2014, a state trial court formally issued its judgment sentencing Wilson to 183 years in prison. Wilson appealed to the Indiana Court of Appeals. That court affirmed, except for finding that the two-year sentence for criminal gang activity duplicated the 60-year criminal gang sentencing enhancement. The appellate court vacated the gang activity conviction and reduced the total sentence to 181 years. Wilson's direct appeal ended with the Indiana Supreme Court denying a transfer petition (Indiana's form of discretionary review). After that, the Indiana appellate opinion was certified and became final on August 19, 2015.

Next, on August 11, 2016, Wilson filed his petition for post-conviction relief in a state trial court. The trial court denied relief on November 21, 2018, after an evidentiary hearing. Wilson appealed. The Indiana Court of Appeals reversed that denial on June 27, 2019, finding that Wilson's trial counsel had been ineffective by failing "to present any evidence related to youth and its attendant characteristics or to Wilson's own

youth, environment, mental health, good character, or prospects of rehabilitation." *Wilson v. State*, 128 N.E.3d 492, 502 (Ind. App. 2019). The state appellate court ordered a new sentencing hearing. *Id.* at 503. The State then petitioned the Indiana Supreme Court for transfer.

The Indiana Supreme Court granted the transfer petition, thus vacating the appellate opinion, and issued its own opinion on November 17, 2020. 157 N.E.3d 1163 (Ind. 2020). Wilson argued to the Indiana Supreme Court that his 181-year cumulative sentence was unconstitutional under the Eighth Amendment based on the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), and that his trial counsel was ineffective for failing to investigate and present mitigation evidence at his sentencing hearing. Wilson also argued that his appellate counsel was ineffective for failing to challenge the appropriateness of his sentence under Indiana Appellate Rule 7(B) on direct appeal.

The Indiana Supreme Court rejected Wilson's argument that his sentence violated the Eighth Amendment. The court explained its view that, first, *Miller* did not apply to sentences for terms of years, even if they amount to de facto life sentences like Wilson's, and second, that even if *Miller* applied, the sentencing court's consideration of Wilson's youth and background would suffice to satisfy this expanded application of *Miller*. *Wilson*, 157 N.E.3d at 1184. The Indiana Supreme Court also found that Wilson's trial counsel sufficiently investigated Wilson's background and potential mitigation arguments. *Id.* at 1177–78. The court found, however, that Wilson's appellate counsel was ineffective for failing to challenge the sentence under Indiana Appellate Rule 7(B). *Id.* at 1180–81.

Indiana Appellate Rule 7(B) authorizes an unusual degree of appellate review of criminal sentences: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." On direct appeal, Wilson's appellate counsel did not argue that his sentence should be revised under this rule. The Indiana Supreme Court explained: "The correct remedy for this failure, in this instance, is to give Wilson a new chance to present an Appellate Rule 7(B) claim. But rather than remand for consideration, in the interest of judicial economy, we choose to now conduct a review of the sentence under Appellate Rule 7(B)." 157 N.E.3d at 1181.

Taking into account the evidence available during the direct appeal of Wilson's original conviction and sentence, the Indiana Supreme Court explained that a downward adjustment to his sentence was appropriate. *Id.* The court reduced Wilson's sentence from 181 years to 100 years, finding that his youth at the time of conviction was "the main factor weighing in favor of a shorter sentence." *Id.* at 1184.

Wilson sought rehearing, arguing that the 100-year reduced sentence also violated the Eighth Amendment. The Indiana Supreme Court denied Wilson's petition for rehearing in an order without an opinion on January 22, 2021. Wilson's new 100-year sentence was entered by the state trial court on February 12, 2021. Wilson tried to appeal the new, reduced sentence on February 22, 2021, but the Indiana Court of Appeals dismissed the appeal just two days later, on February 24, 2021, explaining that it did not have authority to review decisions of the Indiana Supreme Court.

On March 15, 2022, Wilson filed a federal habeas corpus petition under 28 U.S.C. § 2254. Wilson asserted that he was a juvenile at the time of his offense and that his new 100-year sentence amounts to a mandatory, de facto life sentence without parole that violates the Eighth Amendment as construed in *Miller v. Alabama*, 567 U.S. 460 (2012). In opposition, the State argued that Wilson's petition was filed too late and that relief was not justified on the merits.

The federal district court denied the petition, finding that Wilson's petition was timely but that no clearly established law extended the Supreme Court's holding in *Miller* to de facto life sentences. *Wilson v. Neal*, No. 3:22-cv-00205-JD-MGG, 2023 WL 3750544, at *5, 8–9 (N.D. Ind. May 31, 2023). The district court issued a certificate of appealability on the question whether the Indiana Supreme Court ruling on the Eighth Amendment challenge contradicted or unreasonably applied clearly established law. *Id.* at *10, applying Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.

## II. *Timeliness*

The State argues first that we should not reach the merits of Wilson's claim because he filed his federal petition too late under 28 U.S.C. § 2244(d). No facts material to the issue are in dispute, and we review this question de novo. See *Arnold v. Richardson*, 14 F.4th 780, 784 (7th Cir. 2021). The statute of limitations for a habeas petition is one year from (for purposes of this case) the date upon which the judgment against Wilson became final either by the conclusion of direct review or the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). The statute of limitations is tolled, however, during the time in which a properly filed petition for state

post-conviction collateral review is pending in the state courts. 28 U.S.C. § 2244(d)(2).

The district court and parties agree on these general rules but disagree on how to apply them to Wilson's petition. The parties put forth several theories on timeliness. To avoid undue confusion, we will not recount and refute all the theories they suggest. Instead, we agree with the district court's bottom line that Wilson's petition was timely, and we explain only our route to this conclusion.

A. *Competing Timelines*

The dispute boils down to whether the Indiana Supreme Court's decision to reduce Wilson's original sentence should be deemed to have caused entry of a new, intervening judgment that reset to zero the one-year clock in section 2244(d). If so, then his petition was timely, and if not, then it was indeed untimely.

To unpack this a bit further, recall that direct review of Wilson's original sentence concluded on August 19, 2015, when the Indiana appellate court's opinion reducing the sentence to 181 years was certified. The section 2244(d) one-year statute of limitations clock began to run 90 days later, on November 17, 2015. (The extra 90 days come from the 90-day deadline to file a petition for certiorari. See Supreme Court Rule 13; *Jimenez v. Quarterman*, 555 U.S. 113, 119–20 (2009) (petitioner's conviction becomes final for purposes of section 2244(d)(1)(A) when time for seeking certiorari review by Supreme Court expires if no petition is filed).)

Wilson filed his state petition for post-conviction relief on August 11, 2016, tolling the limitations period, effectively stopping the clock with 98 days left in the one-year limitations

period for filing a federal petition. Wilson's state post-conviction proceedings concluded on January 22, 2021, when the Indiana Supreme Court denied his petition for rehearing. At that time, the federal statute of limitations clock began to run again. The question, though, is whether the new 100-year sentence ordered by the Indiana Supreme Court reset the clock to zero, giving him one year plus 90 days to file, or whether he had only 98 days left to file his federal petition. Wilson filed his federal petition on March 15, 2022. It was timely if the new sentence reset the clock at zero but late if it did not.

B. *New Judgment*

We agree with Wilson and the district court that Wilson's reduced 100-year sentence constituted a new, intervening state-court judgment that started a new statute of limitations clock for federal habeas relief. We draw from the Supreme Court's reasoning in *Magwood v. Patterson*, 561 U.S. 320 (2010). In *Magwood*, the Supreme Court analyzed section 2244(b)'s bar on "second or successive habeas corpus application[s]." *Id.* at 330–36, quoting 28 U.S.C. § 2244(b)(1) & (2). The petitioner in *Magwood* had been sentenced to death, and the state courts had upheld the sentence on direct appeal and in state post-conviction proceedings. A federal district court then set aside the death sentence and ordered a new sentencing proceeding in state court. After a new sentencing hearing in the state trial court, the petitioner was again sentenced to death. He then challenged the new death sentence in another federal habeas petition. The federal district court granted relief, once again finding the sentence constitutionally defective. The federal appeals court reversed,

holding that the petition was barred as a "second or successive" challenge.

The question for the Supreme Court was whether the new federal petition constituted a "second or successive" application under section 2244(b). *Id.* at 330. The Court held that it was not, and its reasoning applies to the mirror-image question here. The Court looked to section 2254 to determine the meaning of "second or successive." *Id.* at 331–34. Section 2254 specifies that a petition sought under that statutory provision is an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the *judgment* of a State court." 28 U.S.C. § 2254(b)(1) (emphasis added). A federal habeas petition thus "seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement." *Magwood*, 561 U.S. at 332 (emphasis in original), quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005). As the Supreme Court explained: "Custody is crucial for § 2254 purposes, but it is inextricable from the judgment that authorizes it." *Id.* at 333. This means "a prisoner is entitled to one free-standing collateral attack per judgment, rather than one attack per stretch of imprisonment." *Id.* at 334 (alteration omitted), quoting *Beyer v. Litscher*, 306 F.3d 504, 507 (7th Cir. 2002). This meant for the petitioner in *Magwood* that his second death sentence was imposed by a new *judgment*. His second federal habeas petition was his first to challenge that judgment, so it was not "second or successive" for purposes of section 2244(b). *Id.* at 342. Implicit in that reasoning is the conclusion that the new judgment also started a new clock under section 2244(d) for the petitioner in *Magwood*.

In this case we address a different subsection of section 2244—subsection (d) regarding the statute of

limitations—but the same language and logic apply. Section 2244(d) itself specifies that the one-year statute of limitations applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." That's the same language the Supreme Court drew from section 2254 and relied upon in *Magwood*. The judgment that now authorizes Wilson's confinement is the judgment to which the statute of limitation applies. See *Magwood*, 561 U.S. at 332; *Burton v. Stewart*, 549 U.S. 147, 156 (2007) ("Final judgment in a criminal case means sentence. The sentence is the judgment." (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

C.  *Distinguishing White*

The State argues that, pursuant to our decision in *White v. United States*, 745 F.3d 834 (7th Cir. 2014), Wilson's new 100-year sentence was a simple *reduction* in his original sentence, not a *resentencing*, and therefore not a new judgment. Based on this logic, the State contends, Wilson is not in the same position as the petitioner in *Magwood*, who had a full resentencing.

We do not think this case should be decided based on labels and a court's choice to say that a sentence was reduced rather than that the defendant was resentenced. Instead, we look to what the courts actually did in *Magwood* and *White* and compare that to what the Indiana Supreme Court did in determining that Wilson should have been sentenced to 100 years in prison.

In *White*, a federal prisoner moved to reduce his sentence under 18 U.S.C. § 3582(c) after the United States Sentencing Commission adopted a guideline amendment that applied

retroactively to his original sentence. 745 F.3d at 835. The judge granted relief under section 3582(c) and reduced the sentence by 68 months. Nine months later, the prisoner filed a section 2255 motion. The district court denied the motion, finding it was both untimely and barred as a "second or successive" petition. *Id.*; see also 28 U.S.C. §§ 2244, 2255(f) & (h). We dismissed the appeal, explaining that a sentence reduction under section 3582(c) is distinct from resentencing. 745 F.3d at 836–37. We relied on *Dillon v. United States*, 560 U.S. 817 (2010), where the Supreme Court explained: "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." 560 U.S. at 826.

We also explained in *White* the notable procedural differences between a resentencing and a sentence reduction under section 3582(c). 745 F.3d at 836. For example, a district judge considering a petition under section 3582(c) is not required to receive evidence or to reopen any issue decided in the original sentence. *Id.* To the contrary, U.S. Sentencing Guideline § 1B1.10(b)(1) specifies that courts making retroactive adjustments to a sentence "shall leave all other guideline application decisions unaffected." Thus, a judge acting under section 3582(c) is circumscribed to reducing a sentence in accordance with the retroactive U.S. Sentencing Guidelines amendment. Further, section 3582(c) does not entitle a prisoner to this retroactive sentence reduction. If a court grants such a discretionary reduction, it is not a resentencing that constitutes a new judgment and does not "reset the clock or the count, for purposes of § 2244 and § 2255." *White*, 745 F.3d at 836–37.

By contrast, in *Magwood* the petitioner's second death sentence was "the result of a complete and new assessment of all the evidence, arguments of counsel, and law." 561 U.S. at 326 (internal quotations omitted). The Supreme Court explained: "An error made a second time is still a new error. That is especially clear here, where the state court conducted a full resentencing and reviewed the aggravating evidence afresh." *Id.* at 339.

We now return to the Indiana Supreme Court's analysis under Indiana Appellate Rule 7(B). We may frame our issue as whether that court's reduction of Wilson's 181-year sentence to 100 years was more akin to the new sentence in *Magwood* or the reduced sentence in *White*. Rule 7(B) permits an appellate court to modify a sentence where "the sentence is inappropriate in light of the nature of the offense and the character of the offender." The Indiana Supreme Court has explained that the rule authorizes a comprehensive look at the offense and the offender: "Whether a sentence should be deemed inappropriate 'turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.'" *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020), quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

In Wilson's case, that's exactly what the Indiana Supreme Court did. It analyzed the nature of his offenses and compared them to other cases to determine, for example, if the murder victims were "tortured, beaten, or lingered in pain." 157 N.E.3d at 1181–82 (internal quotations omitted). The court also explained that the crime's gang connections warranted an enhanced sentence. Next, the court considered Wilson's character, including his prior misdemeanor and his

continued expression of pro-gang sentiments while incarcerated, balanced against his status as a minor when he committed the murders. In particular, the court compared Wilson's situation—"a sixteen-year-old who committed robbery and a double murder"—to factually analogous cases to determine an appropriate sentence. *Id.* at 1183–84.

While the Indiana Supreme Court did not consider new evidence, it did consider new arguments, and it independently reviewed sentencing factors, all after full briefing and oral argument. If the Indiana Supreme Court had remanded for the trial court to reweigh the sentence, the result would have been a new judgment indistinguishable from the new judgment ordered on collateral review in *Magwood*. We see no reason that the state court's choice on collateral review, "in the interest of judicial economy," 157 N.E.3d at 1181, to take the shortcut by conducting the review itself rather than remanding for a new trial-court decision should produce a different result for purposes of the section 2244(d) federal statute of limitations.

The Indiana Supreme Court's application of Rule 7(B) was much closer to the new sentencing hearing in *Magwood* than the limited sentence reduction procedure in *White* under section 3582(c). The Indiana Supreme Court itself has explained that review and revision of sentences under Rule 7(B) is "an exercise of judgment that is unlike the usual appellate process, and is very similar to the trial court's function" when weighing various sentencing factors. *Cardwell*, 895 N.E.2d at 1223. We thus find that the Indiana Supreme Court's decision to reduce Wilson's sentence to 100 years, and the resulting Indiana trial court order entering that sentence, constituted a new judgment that reset the clock on

the section 2244(d) statute of limitations for federal habeas relief.

Wilson's 100-year sentence was entered by the trial court on February 12, 2021. That was the new judgment ordering the custody that he challenges in this habeas proceeding. See, e.g., *Jensen v. Pollard*, 924 F.3d 451, 455 (7th Cir. 2019) (noting that petitioner was challenging custody imposed by new judgment). Wilson tried to appeal that sentence through direct review in the state courts, but no such further review was available. The Indiana Court of Appeals found it did not have jurisdiction to hear what was in effect a request to review a decision by the Indiana Supreme Court, so it dismissed Wilson's appeal with prejudice. See Dkt. No. 7-21 at 2; see also *Dragon v. State*, 774 N.E.2d 103, 107 (Ind. App. 2002) ("We are bound by the decisions of our supreme court. Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment," and "it is not this court's role to 'reconsider' supreme court decisions." (internal citations omitted)), transfer granted, 783 N.E.3d 702 (2002), transfer vacated, 783 N.E.2d 687 (2003). The new federal habeas clock started running no earlier than February 12, 2021, when the new judgment imposing custody was entered, though perhaps it might not have started until twelve days later on February 24, 2021, when the Indiana Court of Appeals dismissed Wilson's attempt to appeal. That difference does not matter here.

Wilson could have petitioned the Supreme Court of the United States for certiorari review. See, e.g., *Wallace v. Mississippi*, 43 F.4th 482, 498 (5th Cir. 2022) (explaining that review on petition for certiorari is available when highest state court in which review may be had is the trial court).

Thus, Wilson had one year and ninety days running at least from February 12, 2021 to file his federal petition. His federal petition filed on March 15, 2022 was timely.

III. *The Merits*

    A. *Review under AEDPA*

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) amendments to 28 U.S.C. § 2254, a habeas petitioner faces steep obstacles to prevail on a claim the state courts have rejected on the merits. To obtain federal relief, the state court's decision must have been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1) & (2). Federal courts review "the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. ___, ___, 138 S. Ct. 1188, 1192 (2018). A state-court decision is contrary to clearly established law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). In this context, an "unreasonable" application of clearly established law means "objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotations omitted). A petitioner must show "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

These deferential approaches to state-court decisions apply, however, only if the petitioner's claims were adjudicated on the merits by a state court. "If no state court has squarely addressed the merits of a habeas claim, we review the claim *de novo* under the pre-AEDPA standard of 28 U.S.C. § 2243, but still with deference to the state court." *Ruhl v. Hardy*, 743 F.3d 1083, 1091 (7th Cir. 2014). Wilson contends here that the state courts did not adjudicate the merits of his federal Eighth Amendment challenge under *Miller*, which would leave us free to decide the Eighth Amendment issue de novo, "to dispose of the matter as law and justice require." 28 U.S.C. § 2243; *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (ordering habeas relief).

B.  *Adjudicated on the Merits*

We find that the Indiana Supreme Court did adjudicate Wilson's Eighth Amendment claim on the merits. The standard of review under section 2254(d) therefore applies and defeats Wilson's claim.

Wilson points out correctly that the state trial court's order entering his 100-year sentence did not contain any reasons explaining the sentence. A federal court must, however, "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. at ___, 138 S. Ct. at 1192. That reasoning applies with even more force when the unexplained order comes from a lower court that is required to follow the instructions of the higher court, here the Indiana Supreme Court.

Wilson argues, though, that his arguments in his federal habeas petition are different than his original arguments to the Indiana Supreme Court because of the state trial court's issuance of his new sentence. Wilson's habeas petition makes two primary arguments: (1) that *Miller* extends to de facto life sentences for minors; and (2) his 100-year sentence qualifies as a de facto life sentence and therefore is unconstitutional under *Miller* and the Eighth Amendment. Before the Indiana Supreme Court, Wilson's arguments were aimed at a 181-year sentence but were otherwise identical: (1) *Miller* extends to de facto life sentences; and (2) his 181-year sentence qualified as a de facto life sentence. We do not require that the state court have considered a federal claim in exactly the same format as it is presented in a federal habeas petition to find the claim was adjudicated on the merits. See *Flint v. Carr*, 10 F.4th 786, 796–97 (7th Cir. 2021) (state-court determination on ineffective assistance of counsel claim premised on failure to object on double jeopardy grounds was enough to find petitioner's double jeopardy claim was adjudicated on the merits); *Murdock v. Dorethy*, 846 F.3d 203, 208–09 (7th Cir. 2017) (state court determination affirming denial of suppression of pretrial statements was enough to find petitioner's ineffective assistance of counsel claim based on a failure to file a motion to suppress pretrial statements was adjudicated on the merits); *Sturgeon v. Chandler*, 552 F.3d 604, 611–12 (7th Cir. 2009) (state court considering argument of need for a competency hearing in resolving ineffective assistance of appellate counsel claim was enough to find petitioner's due process claim of a right to a competency hearing was adjudicated on the merits).

The Indiana Supreme Court found that "*Miller*'s enhanced protections do not currently apply to Wilson's 181-year term

of years sentence" and that *Miller* applies "only to life-with-out-parole sentences." 157 N.E.3d at 1176. This reasoning would apply to Wilson's reduced 100-year sentence just as it did to his 181-year sentence. We are confident that when the Indiana Supreme Court reduced Wilson's sentence under Rule 7(B), it had not forgotten his Eighth Amendment arguments it had rejected earlier in the same opinion. Because the state court "could not have decided the same … question any differently … the merits were effectively reached." *Sturgeon*, 552 F.3d at 612. A state court adjudicated Wilson's federal habeas petition claim on the merits, so we apply the section 2254(d) standard of review.

## C. *Miller and Clearly Established Law*

Both sides agreed correctly at oral argument that if typical section 2254(d) review applies to Wilson's claim, it must ultimately fail on the merits. The Supreme Court of the United States has not established the view Wilson presses, specifically, that *Miller* applies to de facto life sentences. The Supreme Court held in *Miller* that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465**.** According to the *Miller* Court, "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes," *id.* at 472, but "mandatory penalty schemes … prevent the sentencer from taking account of these central considerations," *id.* at 474. Critical for Wilson's case, the Supreme Court did not bar courts, in their discretion, from imposing a sentence of life without parole on a juvenile convicted of murder. Instead, the Court required sentencing

courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. Therefore, under *Miller*, there is no categorical bar against sentencing juveniles convicted of murder to life without parole.

*Miller* framed its holding in terms of mandatory sentences of *life without parole*. The Court did not specify how its reasoning might or might not apply (a) to sentences of life without parole imposed by exercise of judicial discretion or (b) to sentences imposing terms of years that may or will amount, in effect, to life sentences. Nor did the Court reach the question (c) of how courts might determine reliably when a long sentence of years should be deemed a de facto life sentence, if indeed its reasoning extends to such sentences.[1]

---

[1] The parties dispute whether Wilson's sentence amounted to a mandatory de facto life sentence or whether it was discretionary. Under Indiana law in effect when Wilson committed his crimes, the murder convictions came with a mandatory sentence within the range of 45 to 65 years, with an advisory sentence of 55 years. Ind. Code § 35-50-2-3 (2013). The criminal gang enhancement carries with it a mandatory, consecutive sentence equal to the longest sentence imposed for one of the underlying felonies. Ind. Code § 35-50-2-15 (2013). That means Wilson was *required* to be sentenced to at least 90 years in prison. That is clearly a mandatory, de facto life sentence—Wilson was sixteen at the time of his crimes, so he would be in prison until at least the age of 106.

The State has two counterarguments, however. First, under Indiana law that applied at the time, Wilson is eligible for day-for-day good-time credit. This credit offers the possibility of reducing his original mandatory sentence by half, so that he could be released within 45 years. While that sentence would still be severe, the mandatory sentence would not necessarily amount to a de facto life sentence for an offender who was 16 years old. Second, the State argues that the existence of Rule 7(B) itself means that Wilson's sentence was not mandatory. As explained above, the rule

In *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016), this court concluded that the reasoning of *Miller* should extend to discretionary life sentences and to de facto life sentences. But see *id*. at 914–16 (Ripple, J., dissenting), citing *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014) (denying permission to file successive collateral attack because *Miller* does not apply to discretionary life sentences). Our decision in *McKinley* does not help Wilson satisfy the section 2254(d) standard of review. See *Howes v. Fields*, 565 U.S. 499, 505 (2012) (explaining "clearly established law" refers to the holdings of the U.S. Supreme Court's decisions). Whether this court agrees with the Indiana Supreme Court's decision that *Miller* does not apply to Wilson's de facto life sentence does not matter. The state court's decision was not contrary to or an unreasonable application of clearly established law set forth in precedents of the Supreme Court of the United States.

The district court's denial of Wilson's petition for a writ of habeas corpus is AFFIRMED.

---

allows appellate courts, in their *discretion*, to reduce an otherwise lawful sentence, meaning no sentence is truly mandatory. Or at least, so the State argues. At oral argument, Wilson pointed out the Indiana Supreme Court has never upheld the use of Rule 7(B) to reduce a sentence below a statutory minimum. We need not resolve the merits of these arguments here. The Supreme Court of the United States has never extended *Miller* to a sentence to a term of years, so it does not matter to our decision whether Wilson's sentence is deemed discretionary or mandatory.